312803 Pekin Insurance Company v. United Contractors Midwest, Inc. Charles Hill, Jr. Appellees by Craig O'Connor Good afternoon, Your Honor. May it please the Court, Counsel, for the Plaintiff-Appellant, Pekin Insurance Company, Robert Chemers. This is an appeal from Peoria County on an insurance coverage declaratory judgment suit with cross motions for summary judgment. The trial court decided in favor of the additional insurer. The issue before this Court is one that has been frequently litigated in other courts in Illinois, but it's this Court's first chance to look at this issue. I submit to the Court that the question is, how will this Court determine whether the insurer owes a duty to defend under the additional insured endorsement? This Court and countless Illinois reviewing courts and trial courts for years have applied the standard test. Insurers' duty to defend is determined by comparing the allegations of a complaint against the policy, here against the policy's endorsement. Or, has the duty to defend test been so eviscerated to the point that a court can go beyond the actual complaint to create or consider a hypothetical version of that plea, and then determine the duty to defend? That would create a guessing game. We ask this Court not to do that. Use the allegations as pled in the determination of the duty to defend, said the courts in Pekin v. Rosak and Pekin v. UPS. Or, create a hypothetical complaint which presupposes construction law and inserts allegations that simply aren't there. Pekin v. Hallmark-Holmes, Pekin v. Pulte. One from the 1st District, one from the 2nd District. We've litigated this enough in the Circuit Court of Cook County that the 1st District is opposed to each other. The divisions are in conflict. At one time, the reviewing courts in Illinois limited additional insured coverage to the negligence that is attributable to the named insured, and unanimously enforced endorsement similar to that at issue in this case. The 2nd District in 2009 spawned a new interpretation. That is, they inserted allegations which are not there. And yet that court, in the Hallmark-Holmes case, wound up backtracking from its own ruling in a decision that came down last year in a case called Pekin Insurance v. Precision Dose, which we have cited. Under the rule that the Hallmark-Holmes Court would espouse, which is one that Mr. Umarath embraces, the underlying allegations suggesting that a defendant general contractor had control over the work can be read to be that the general contractor was vicariously liable for the negligence of the sub, a reading which would result in coverage. The 1st District said no. The 1st District in Pekin v. Rozak said... Let me interrupt for a moment. If we look at this complaint, what is the allegation of the negligent act that the subcontractor performed in this case? In this complaint, there are none, and I'm glad you're on our asset. I would suggest the court look at C-152 of the record, which is page appendix 1 of the brief of appellant. The complaint in this case, in paragraph 3, sets forth the allegations by the tort plaintiff, Hill, against Cullen, also known as Cullen in Tulsa United Contracts. It's quite amazing, and it's amazing from the standpoint that I don't do plaintiff's personal injury work, but in that library there must be a book where you can find a complaint, where you can change names, dates, and locations, and have a lawsuit. The reason I say that, Justice Wright, you asked about the allegations here. Let's look at paragraph 3. Paragraph 3 is also found in Hallmark Homes, 392 Hill F. 3rd at 594. Surprisingly, it's also found in Pekin v. Pulte, 404 Hill F. 3rd, 337. And it's found in Pekin v. Rozak, 402 Hill F. 3rd, 1056, 1057. It's identical. Identical. The only differences are the names. But it's identical. And paragraph 3 in this complaint does not suggest that Durdell was not free to do the work it was contracted to do in its own way. But that's how the court in Pekin v. Rozak looked at those allegations. The second district in Hallmark Homes and a division of the first district led by Justice Quinn in Pulte said it possibly suggests control, but it doesn't. And you can't decide, or I won't say that you can't to a court, you shouldn't decide an insurance coverage determination based on what possibly could be there. It's a potential. Potential's a little less than possible. Anything's possible. I do understand that we can be inventive as to theories, but I don't think it's within our province or the province of the trial court to be inventive as to facts. And I don't see any facts alleged that says Durdell acted in a negligent fashion. That is correct. And without those facts, there is no way to look at this complaint and even assume that the liability of Cullinan, United Contractors, is based solely on the negligent acts or omissions of Durdell. You cannot draw that assumption. And the only way that Cullinan is covered for this claim is if it is blameless but liable. If it is subject to liability solely because of the acts or omissions of the named insurer. The trial court made that finding in his ruling, and he also said there was no conflict, and he also said he could look at the third-party complaint and the subcontract. Now, this court can look at what it wants to for this determination, and I would submit to the court that under Pekin v. Wilson, when our Supreme Court said that under unique and compelling circumstances, you're not locked into the four corners of a complaint and the four corners of a policy. But if you have the unique and compelling circumstances, you could look at other things which are typically looked at on summary judgment, according to the Supreme Court. But consider what they were dealing with there. That was an appeal from the 5th District Appellate Court, which affirmed a judgment on the homeowner's policy and reversed the judgment by the circuit court judge on the CGL policy, and here's why. The homeowner's policy had a standard garden variety intentional act bodily injury exclusion. If it was intentional, it was excluded, whereas the CGL policy had an intentional act exclusion with an exception for self-defense. Now, a tort plaintiff doesn't plead that I was beaten by this guy who was in the act of self-defense. No, that was pled by the insured in his counterclaim. And what the Supreme Court held was it's appropriate where there's an allegation like that, a unique and a compelling circumstance, to look at that plea to determine if the exception to the exclusion applies. That was in the CGL policy. Our Supreme Court did not have the homeowner's policy in front of it because the appellate court affirmed that judgment and there was no further appeal taken there. That did not have the exception. There are no unique or compelling circumstances here. And beside that, what would the court look at? It would look at the third-party complaint authored by Cullinan. And Cullinan, who in its own appellee brief says, the tort plaintiff is not the architect of coverage. You can't just look at those allegations. Okay. Then, because we're lawyers, we can talk out of the other side of her mouth at the same time. But look at my allegations against her death. And if you look at the allegations of the third-party complaint, which we suggest you don't need to look at, but if you do, if you look at the allegations of the third-party complaint, you'll see that at best or at worst, they share viability. They're both negative. One is alleging that the other was negligent, and because of that negligence, you owe me contribution for my negligence. And the trier of fact will determine the percentage of fault. It doesn't allege. Every single thing you did exposed me to liability, and I'm blameless, but I'm going to be liable because of you. That's not even in their third-party complaint. So their third-party complaint doesn't help. Look at the subcontract, because the court in Pulte said you could look at the subcontract. But in Pulte, when they looked at the subcontract, Justice Quinn wrote, the duty to defend is determined by the subcontract. Well, that's a first. Pink and Insurance didn't issue the subcontract. They issued the CGL policy. So that might be a slip of the typewriter, so to speak. But in any event, look at the subcontract here. Look at Article 2. It's unmistakable that Article 2 shows Durdell had control of the work it was doing. They were removing trees along some road undergoing construction in Peoria. Article 2 of the subcontract, page C-292 of the record, shows Durdell controlled the operative details of tree removal. Now, for Cullinan to be entitled to coverage under this endorsement, Cullinan would have to have controlled through the contract the operative details of the work of the sub, and it did not. It's not alleged by Hill, and it would be belied by the subcontract itself. They then say, well, look at Article 9. Article 9 is page C-277 of the record. Article 9 deals with indemnification. Well, that's the last thing you'd look to to determine an obligation in Illinois, because if it was indemnity for the negligence of Cullinan, it's void. There's a statute that's been on the books in this state since, I think, 1971 that says indemnity agreements and construction contracts are void, unenforceable. And even if you have insurance, that doesn't make it any better. There's no duty to defend a void indemnity. Cullinan says, look to Pulte, follow Pulte, look to the subcontract. We respect that approach, because if you look at the subcontract, you'll see it belies their argument. It doesn't support the application of this endorsement. The court in Pulte Home said the policy should be interpreted with regard to, quote, the purpose for which the insurance policy was written, close quote, 404-11-343. What was the purpose of this policy, according to Article 10 of the subcontract, C-277 of the record? The purpose was for Durdell to provide insurance for Cullinan, to protect Cullinan against the consequences of Durdell's negligence. There is no intention expressed in the subcontract or in any pleading in this record, there's no intention in any of those areas that Durdell would supply insurance that would protect Cullinan against the consequences of Cullinan's own negligence. In fact, the very endorsement we're talking about says, you're an insured to the extent you're liable solely because of the act or omission of the named insurer. Then there is a specific exclusion that excludes the liability of the name, of the additional insurer. You have to look at it from an insurer's perspective. Insurance companies insure risk. When they did underwriting, they underwrite Durdell. They knew what that risk meant. They charged a premium, and they tell Durdell, you can add anybody in the world on the policy as an additional insurer, as long as we don't insure the risk of the negligence of the additional insurer. And you can have everybody in this courtroom as an additional insurer on the policy, as long as you're only covered for the negligence of Durdell. You haven't increased the risk of the insurance company one iota, not one nickel, because the liability is that of Durdell, which is the known entity to the insurer. That's the essence of insurance. That's the essence of this policy, which is why the case – and I'm not going to stand in front of this court and say, Hallmark Holmes in the 2nd District got it wrong. Pulte in the 1st District got it wrong. We had that opportunity. It's called a petition for rehearing. It's called a petition for relief to appeal. Those went nowhere. So these cases are on the books, and then you look at either Hallmark Holmes or at Pulte, and they – and Rosak, Justice Gordon, Robert Gordon, in that decision said, these cases aren't a conflict. You have to look to the – like Justice Wright asked, you look at the allegations of a complaint, read those in the light of the language of the endorsement to the policy. You can't say you just have to follow a certain case. Each case is somewhat different factually. Each case, as to the law, should be the same when the law is applied because the endorsements are virtually identical in the five published opinions. Thank you. When we look at this, you can resolve this case, frankly, Your Honors, by looking at the first three pages of the complaint. In fact, focus on paragraph 3. The underlying plaintiff nowhere suggests that Cullen is legally liable for Durdell's negligence, despite being blameless itself. That having been said, the complaint is the basis for finding that there should be no duty to defend. The policy is not designed to cover someone else's liability. It's only designed to cover Durdell's or liability that Durdell's conduct imposes on another solely because of Durdell, not because of Cullen. And for all those reasons, Your Honors, unless you have questions, I would ask this Court to reverse and enter judgment for Pekin. You have a few minutes to rebuttal. Thank you. Mr. Unran. Thank you, Your Honors. Unlike many insurance coverage cases, this appeal does not turn on the interpretation of some esoteric contract provision. It relies on some of the most fundamental principles of insurance law in Illinois, and I'm talking about the maxims of insurance law, the very basis of all insurance law in Illinois. I'll start with an easy one. Pardon me. The underlying complaint and insurance policy must be liberally construed in favor of the insured. I think we've all heard that, seen that in hundreds of briefs. Here's another one. Any provision in a policy that limits or excludes coverage must be construed liberally in favor of the insured and against the insurer. I'm 20 years in insurance defense, and I've had these thrown at me for almost every case, and you have no idea which relish I grant to finally being able to use these in support of my own argument. One of the cases the plaintiff, or Pekin, relies upon is Pekin v. UPS, and Justice McNulty wrote a dissent in that case. The dissent is remarkable because she didn't go on and on through an examination of the flaws in this analysis or that analysis. She didn't reinterpret the contract. What she did was she cited a basic, fundamental rule of insurance law. She said, an insurer may refuse to defend only if the allegations in the underlying complaint preclude any possibility of coverage. That was the gist of what she said, and that's all she said. Hallmark Holmes, the case that we rely on primarily in our case, when you go through that, what they're relying on, in every step of that court's analysis, they're relying on fundamental principles of insurance law. Now, Pekin argues that Hill's complaint contains no outright allegations of vicarious liability on the part of Cullinan. Therefore, it has no duty to defend. That's taking a look at the actual theories of law that are raised in that complaint, not the actual facts, not the facts that can be drawn from it. Not the facts that can be drawn from it? How can we draw facts from a complaint? I'm sorry, Your Honor. Not the facts alleged in the complaint. Because that would make some of these appeals a lot easier. I know. I know. It certainly would. Pekin would have this court believe that they can look at this complaint and say, look, there are no specific allegations of vicarious liability. Therefore, we lose. What is the allegation of negligence? The negligent act of Dirtle that would give rise to vicarious liability. What did Dirtle do wrong? Hill complained that Cullinan designated various work methods, that they were involved in this appeal. Cullinan. Cullinan, yes. What did Dirtle do wrong? What did Dirtle do wrong? Because if you're asserting Cullinan, the additional insured was negligent, there's an exclusion for that. What we have is we have a complaint against Cullinan, allegations of direct negligence and vicarious liability based on the fact that they Cullinan's direct negligence is excluded. Pardon me? Cullinan's own negligence as the additional insured is excluded under the powers. Absolutely. Right. So Cullinan has to be responsible for somebody else's act. Exactly. Whose act and where is it? Point to the paragraph because I can't find it. Your Honor, what you're asking, the burden that you're placing on my client is this, is that you're saying that Hill, the injured party, Yes. in suing Cullinan must allege in his complaint, Cullinan, you're the defendant, you're liable, but you really didn't do anything wrong. Okay. It was actually dirt on my own employer, but I can't sue them. Yeah, but can't you allege that they acted negligently? Why can't you allege? You may not be able to sue them, but you can allege. Because to me, vicarious liability requires three parties, the injured party, the blameless party, and I'm not giving you the finger, but the party in the middle that acted negligently because of the supervision and control that Cullinan exercised over them, then whatever Dirdol did wrong, Cullinan is vicariously responsible for. And I don't see the complaint as stating anything other than sole negligence by Cullinan. There are two points I'd like to make in response to that. First, we go back to another fundamental principle. The question of coverage should not hinge on the draftsmanship and whims of the plaintiff's counsel. He cannot sue Dirdol. There is no reason at all for Hill's counsel to raise allegations of negligence against a party that he cannot sue. He's barred from doing that through the Workers' Compensation Act. But the Workers' Compensation Act wouldn't bar him from claiming his employer was negligent if that makes Cullinan vicariously liable. And why would he do that? Because otherwise the coverage for vicarious liability of the additional share isn't triggered. And why should we have to rely on the whims of Hill's attorney? Hill's attorney has one focus, to recover as much as possible as he can to compensate him for his injury. He doesn't forward that process. He doesn't pursue that process by saying that there are other people that are negligent, but I'm not suing them. That, as a matter of fact, draws away from it. Now, another point. The law is that the court can look beyond the underlying complaint. Let's move to your third-party complaint. We have our third-party complaint where Cullinan is placing sole responsibility for this accident on Dirdol. As an independent contractor. And, again, we're not claiming vicarious liability. You're saying we didn't do anything wrong. It was him. Absolutely. And under Section 414 of the Restatement. And we didn't control him. He was an independent contractor. So even your third-party complaint, I don't see. I don't think either complaint states vicarious liability in the cause of action. And this is your opportunity to clear up my confusion. Well, I hope I can, Your Honor. The complaint against Cullinan alleged. Let's go to the third-party complaint. The third-party complaint alleged that Dirdol was entirely responsible for this accident. A jury could believe that. They could find Dirdol is entirely, 100% liable for this accident. And yet Cullinan could still be held liable. Why? Because of Section 414 of the Restatement Second of Torts. Which states that if Cullinan exerts some degree of control. I'm not saying that they control the work. Some degree of control. Then they are vicariously liable. And that is a possibility that could occur. A jury could find that Dirdol was 100% responsible. And if it does, Cullinan, because of the allegation that Cullinan designated the methods that the work should be done. Cullinan is vicariously liable for that complaint. And therefore we have coverage. Do you think your third-party complaint states a theory of vicarious liability? We would not do that in a third-party complaint. There would be no purpose to that. Again, our purpose in filing a third-party complaint is to place the blame where it belongs on Dirdol. And if Dirdol is held liable, automatically, by operation of law, by operation of Section 414 of the Restatement Second of Torts. Cullinan becomes vicariously liable. Only if Cullinan agrees or admits or is demonstrated to have exercised sufficient control to be responsible for the action. I'm glad you brought that up. As long as they agree to do sufficient control. We look at the allegations of the underlying complaint. We don't question whether that's true or not. But Mr. Hill alleged that Cullinan designated the methods of work. Now you look at the Restatement Second of Torts. It doesn't say that Cullinan must control the work. It says Cullinan must exert some measure of control. It doesn't say that Dirdol is helpless. It cannot do the work in its own way. It says that it is not entirely able to do the work in its own fashion. That is exactly what Hill has alleged in his complaint. Therefore, construing the underlying complaint liberally, it is clear that Dirdol, that Hill has alleged that Cullinan can possibly be held vicariously liable for Dirdol's conduct. And that's what we're dealing with here. Pekin is asking this Court to say that we look for explicit allegations in the underlying complaint that implicate coverage. And that's not how it works. It's the opposite. We look at the complaint for allegations that preclude coverage. Let me ask a question with regard to your argument on this point and your opponent's argument with regard to retaining some control over the routine or incidental aspects of Dirdol's work for the liability. We issued a decision from this Court in 2006 discussing 414, dealing with retaining control. And when you look at 414 and its interpretation by this Court in OSEF, M-O-I-S-E-Y-E-B versus Rotts Building and Development, in that case, it doesn't appear that when you look at that case on the 414 standards and you look at the allegations, where is the allegation dealing or suggesting that Cullinan retained his control over the routine or incidental aspects of Dirdol's work? I mean, it seems like the complaints only suggest nothing more than the performance of general supervision. And the Mosef case goes into the analysis about what you need to do to have that 414 kind of responsibility. And I guess when I'm trying to compare the analysis of 414 in light of that case and what we see here in these complaints, where are the allegations of the suggestions of retaining any control over the routine or incidental aspects of their work? Section 414, I believe it's subparagraph C, states that vicarious liability will be found if Dirdol was not entirely free to do the work in its own way. And I believe that's, quote, entirely free. In the underlying complaint, we have an allegation that Cullinan designated methods by which the work should be done. Now, that's not a suggestion. That's not a hint. That's not a request. It's a designation. And as we pointed out in our brief, that means that Cullinan exercised at least some control over the work. When you designate the methods of the work, you are going beyond supervision. You are going beyond scheduling the work. It's beyond saying the work must stop or when it should start. You're saying that you have to do it in a particular manner, and I'm going to tell you what that manner is. And it doesn't have to be all of the work. It just has to be some portion of the work. If you find that Dirdol was to any extent was not entirely free to do the work in its own way, then you must find liability, vicarious liability, under Section 414. That's how we see it. I mean, it's been said in some of the cases and interpretation of 414, the comments of the 414, and to B&C, that when a general contractor supervises the entire job, affects the means and methods of the subcontractor's work, prevents the subcontractor from working in its own way, and is consistently present on the job site directing operative detail of the subcontractor's work, or supervises the entire safety program, or fails to prevent the subcontractor from doing the details of the work in a way unreasonably dangerous to others, if he knows or, by the exercise of reasonable care, should know that the subcontractor's work is being done and has the opportunity to prevent it by exercising the power of control which he has retained in himself. That's the kind of stuff that they find that's retaining control for purposes of 414. Then you compare that to the allegations or suggestions in the allegations. Your opponent points out Paragraph 3 as far as the allegations in the complaint. So where in Paragraph 3 is that kind of stuff? Paragraph 3, there are many allegations of negligence. Many of them are routine matters of supervision, scheduling, and so forth. But the fact remains is that there is an explicit allegation that Cullinan designated the methods by which the work should be done. And that's all we need. And this court, getting back to the fundamental principles of insurance law, this court must construe the underlying complaint and the policy liberally in favor of the insured. Why wouldn't it find that a party who states where it is alleged that a party designates how work should be done, that is entirely consistent with the notion that Durdell was not entirely free to do the work in its own way. It could not because the general contractor, Cullinan, designated certain methods. That's sufficient, Your Honor. Does your third-party complaint allege that you supervise to such a degree other than routine? I cannot imagine, Your Honor, any circumstances where a person filing a third-party complaint would make such allegations. Because to do so would be to admit liability. I don't understand why. Because you're trying to get coverage from an insurer as an additional insured, and you have to allege that to trigger that coverage. There's an exclusion for your own negligence. The purpose of the Contribution Act claim is not to obtain coverage. It's to obtain indemnity. The purpose of it is to get Durdell, who we believe was entirely at fault, to pay for the damages of this claim. So I cannot imagine any such circumstances. Okay. So you agree that I should not be looking for the third-party complaint to fill in the blanks as to vicarious liability? No. No, Your Honor. And we have to get it from the initial complaint filed by him? I think that what you find in the initial complaint is sufficient to establish that there is a possibility that Cullinan will be held vicariously liable, and that's all we need is a possibility. Okay. Haven't you asked us to consider the third-party complaint, though? I believe that there are certain provisions in there that can arguably support our case, as well as the indemnity agreement. But I believe that on a fundamental basis, the Hills complaint standing alone is sufficient to confer vicarious liability, potentially, on Cullinan, and that's all that's required is the potential that they will be held liable. Do you agree that 414, with regard to the retained control exception, when they refer to that, the case law and the comments are suggesting that that's referring to the control or the operative details? Yes, I do, Your Honor, and I think that when you designate the methods by which somebody performs their work, that is an operative detail. As a matter of fact, I cannot imagine a more operative detail than designating the methods by which you do your work. I'm asking you to build a house, and I don't want you to do it this way. I want you to do it this way. That is, to me, construing it liberally, as this Court must do, that easily fulfills the requisites of vicarious liability. If there's no further questions, thank you very much. Thank you. Mr. Chemers? Briefly, Your Honors, Mr. Elmreath just told this Court that there is vicarious liability under 414 if there is, quote, any right to control, close quote. Well, that's not been the law in this district, as pointed out by Justice Carter, the Mosia case. We cited that at pages 5 and 6 of our reply, and a panel of this Court in that case held, general contractor does not retain control by merely retaining the general right to order the work stopped, inspect work progress, or process, or receive reports. 369 Ill. F. 3rd at 351. That's completely contrary to what Mr. Elmreath, on behalf of the additional insurers, just told this Court. What he also told this Court is also contrary to just about every 414 case. You have to control the operative details of the work. So basically, you hire a professional, and then tell the professional what to do. Tell the professional when to do it, how to do it, where to do it, and every aspect of the work. And that's not what occurred here, and that's not what is alleged here, and that's also contrary, because he also said, look at the third-party complaint. It's not there. He says, look at the subcontract. It's not there. Article 2 said Durdell was going to do its work its own way, pursuant to the general contract that Cullinan had with the owner. But the complaint, Part 1 does allege that Cullinan participated in coordinating the work, designated various work methods, and participated in the scheduling of work, in addition to work progress and inspection. So that is more than just inspecting or reviewing reports. Your Honors, look at the cases that we both have cited on 414 and on this endorsement. What Paragraph 2 and Paragraph 3 both suggest is nothing more than Cullinan acting as a supervisor. That is not a control of the operative details of the work. They're a supervisor. And Hill could have alleged what Durdell did, and he could have alleged why Cullinan is responsible for it. He didn't. And he says here that the tort plaintiff is not the draftsmanship of coverage. Nor is the attorney for the defendant who puts on the third-party plaintiff hat and drafts that. What more self-serving pleading is there than a third-party complaint from an additional insurer that says, oh, the allegations aren't in the complaint, but look what I drafted. That's where you find them. And yet he was asked twice by two members of this panel where they are in the third-party complaint, and he couldn't tell you. They're not there. That's not their theory. They're seeking contribution. So they're saying, as between the two of us, you're more liable than we are. But we're not solely liable because of what you did. By making that argument, they've talked themselves out of coverage, which is why we're asking this Court to reverse. Unless there are questions, I will ask again, reverse, and enter judgment for Peekin. Thank you very much for the civility you both demonstrated to the Court today. We appreciate that very much. I will be taking the matter under advisement and rendering a decision without undue delay.